United States District Court
Northern District of California

UNITED STATES OF AMERICA,

    Plaintiff,

  v.

JAEDON EVANS,

    Defendant.

Case No.: CR-14-70065-MAG-2 (KAW)
CR-14-00093-JSW-3

DETENTION ORDER

## I. BACKGROUND INFORMATION

Defendant, Jaedon Evans, is charged by complaint with violations of Title 18 U.S.C. § 1951(a) and (2) (Conspiracy to Commit Robbery, Attempted Robbery Affecting Interstate Commerce, and Aiding and Abetting).  On February 6, 2014, the United States moved for Defendant's detention pursuant to the Bail Reform Act, and asked for a hearing as permitted by 18 U.S.C. § 3142(f).  Pretrial Services prepared a full bail study.  On February 13, 2014, the court conducted a detention hearing.  Defendant was present, in custody, and represented by Michael Stapanian.  Assistant United States Attorney Brigid Martin appeared on behalf of the Government.  For the reasons set forth below, the court orders that Defendant be detained.

## II. LEGAL ANALYSIS

The Bail Reform Act requires that in a pretrial posture, the government bears the burden of proving that a defendant poses a risk of flight and/or a danger to the community that cannot be mitigated through the imposition of conditions of release.  If the government does not meet its burden, the court's duty is to fashion appropriate conditions that permit the defendant to remain out of custody during the preparation of his or her defense, while safeguarding against flight or danger to the community.  Close cases should result in release: "[t]o give effect to the principle that doubts regarding the propriety of release be resolved in favor of the defendant, the court is to

1

rule against detention in close cases." *United States v. Chen*, 820 F. Supp. 1205, 1208 (N.D. Cal. 1992) (Walker, J.) (citing *United States v. Motamedi*, 767 F.2d 1403, 1405-06 (9th Cir. 1985)).

A person facing trial generally shall be released if some "condition, or combination of conditions . . . [can] reasonably assure the appearance of the person as required and the safety of any other person and the community." 18 U.S.C. § 3142(c). In non-capital cases, pretrial release should be denied "[o]nly in rare circumstances." *Motamedi,* 767 F.2d at 1405; *see also United States v. Salerno*, 481 U.S. 739, 755 (1987) (upholding constitutionality of Bail Reform Act; "[i]n our society liberty is the norm, and detention prior to trial or without trial is the carefully limited exception"). Bail hearings generally proceed by proffer, and the rules of evidence do not apply. 18 U.S.C. § 3142(f). At the hearing, the court determines whether any conditions in section 3142(c) will reasonably assure the defendant's appearance and the safety of the community or another person. *Id.* The Bail Reform Act "mandates release of a person facing trial under the least restrictive condition or combination of conditions that will reasonably assure the appearance of the person as required." *Motamedi*, 767 F.2d at 1405.

In evaluating whether pretrial release is appropriate, a court must consider (1) the nature and circumstances of the offense, (2) the weight of the evidence, (3) the history and characteristics of the person (including his character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug and alcohol abuse, criminal history, or record concerning appearance at court proceedings), and (4) the nature and seriousness of the danger to any person or the community posed by the person's release. 18 U.S.C. § 3142(g); *Motamedi*, 767 F.2d at 1407.

**A. The Nature and Circumstances of the Offense and Weight of the Evidence**

Defendant is charged with violations of Title 18 U.S.C. § 1951(a) and (2) (Conspiracy to Commit Robbery, Attempted Robbery Affecting Interstate Commerce, and Aiding and Abetting).

On June 20, 2013, Oakland Police Officers were engaged in surveillance in the vicinity of 37th Street and Martin Luther King Way, on a matter unrelated to Defendant and his co-defendants. At about 10:15 a.m., an OPD officer saw a red 2001 Acura CL park along the south

side of the 600 block of 37th Street. Defendant, Jaedon Evans and co-defendant Keegan Leecodi Cotton, Jr., (Cotton) got out of the Acura and walked West, looking around and talking on cellular telephones. They continued to loiter in the area for 10-20 minutes until a stretch limousine turned onto 37th Street. Cotton raised his arm as if he was flagging down the driver of the limousine. The driver pulled over, got out, and walked to the rear of the car to open the rear passenger door for Cotton. Cotton stepped up to the open door and leaned inside. At the same time, Defendant came running up to the driver with what appeared to be a firearm in his right hand, which he pointed at the driver. The limousine driver and passenger ran away, and Cotton and Defendant fled from the scene, on foot.

OPD officers saw that, at about the same time that Cotton and Defendant attempted to rob the passenger in the limousine, the red Acura pulled away from the curb and began to move east on 37th Street and then turned south on Martin Luther King, Jr. Way. OPD police cars responded to the scene to apprehend Cotton, Defendant and the red Acura. A short time later, OPD stopped the red Acura, and the driver was identified as co-defendant Rafael Davis (Davis). Davis exited the vehicle with a cellular phone pressed to his head. Defendant, who had been seen earlier fleeing from the scene of the robbery on foot, was a passenger in the Acura. OPD searched the car for weapons and, inside the Acura, recovered a Raven MP-25 .25 caliber semi-automatic pistol, and a black Airsoft BB gun.

Other OPD officers located Cotton on foot in the area and detained him. The limousine passenger identified Cotton as one of the two men who tried to rob her. She also reported that she had been lured out to Oakland from Colorado by a man who purported to want to buy a diamond from her. The victim had placed an ad to sell the diamond on Craigslist. The victim reported that the purported buyer bought her a plane ticket to come to Oakland and sent the limousine to the airport to pick her up. The victim stated that at the time of the attempted robbery, she believed she was on her way to meet the purported buyer to complete the sale of the diamond.

OPD arrested Cotton, Defendant and Davis. Cotton admitted to participating in the attempted robbery with Defendant and Davis. During the arrest, officers found marijuana packaged for sale, and Defendant's girlfriend said Defendant sells "weed."

3

The nature and circumstances of the instant offense involve a relatively complex conspiracy between Defendant and others to lure a victim who posted jewelry for sale on Craigslist to Oakland for the purposes of robbing her at gunpoint – a violent crime. Defendant's involvement in the crime was observed by officers and confirmed by one of the co-defendants. Therefore, while the weight of the evidence is the least important factor, the nature and circumstances of the offense and the weight of the evidence weigh in favor of detention.

**B. The History and Characteristics of the Defendant and the Nature and Seriousness of the Danger to Any Person or the Community**

Defendant is 19 years old and was residing with his girlfriend, Brianna Curnutte, in Vacaville, California at the time of his arrest, and prior to that, with his mother, Shawna York, in Benicia, California for one year. Defendant's girlfriend told Pretrial Services that she was evicted from the apartment as a result of Defendant's arrest which occurred at the residence. Defendant has daily contact with his mother and contact with his father 3 times per week. He has a 2-year-old child and shares custody with the child's mother. He graduated from Benicia High School in 2012 and obtained a welding certificate from West Contra Costa Adult School. Defendant has been working (informally) as a self-employed barber since age 17.

Defendant reported that he has never consumed alcohol, but he began using marijuana at age 15 and uses it daily. He stated that he has a "cannabis card" for ADHD and "back problems." Defendant has not been diagnosed with any mental illness, but he was diagnosed with ADHD and took medication for it from age 13-15.

Defendant has a short but violent criminal history that started when he was a juvenile in 2010. He was convicted of threatening a crime with intent to terrorize, a felony, and sentenced to 123 days in Juvenile Hall and a firearm restriction. According to the police report for that incident, Defendant and his current co-defendant, Davis, were engaged in a verbal altercation with an individual who claimed they had previously attempted to burglarize his home. Defendant and Davis left and returned a few minutes later with a shotgun, which Defendant pointed at the victim and stated, "This will (or "I will") blow your head off."

4

In addition, Defendant was convicted of second degree robbery, a felony, in 2010, and sentenced to 27 days in Juvenile Hall and a firearm restriction. In 2012, he was convicted of fraudulent vote casting and possession of over 28.5 grams of marijuana. Further, Defendant has a pending case in Vacaville for possession of a controlled substance for sale. Records reflect that Defendant was released on a $45,000 bond, and a bench warrant was issued on February 7, 2014. Thus, if he was released from custody, he would be delivered to state custody by the Marshals.

Defendant proposed his mother, girlfriend and the mother of his child as sureties. Defendant's mother, Shawna York, has stable employment and a minimal criminal history involving a misdemeanor conviction in 1990 for battery on a person and 1996 conviction for fraud to obtain aid and perjury that was set aside in 1998. Defendant's girlfriend, Brianna Curnutte, has been employed full-time as an in-home care worker since July 2013 and has no prior arrest history. Defendant's child's mother, Ciara Curtis, is employed part-time at Walmart and told Pretrial Services that she does not have a criminal history. However, Pretrial Services found criminal records for Ms. Curtis showing an arrest in 2008 for battery on a person, in 2009 for battery and in 2012 for embezzlement. She has no convictions as those matters were handled informally or she received diversion.

Defendant has a passport that he believes is in his father's possession, and he traveled to Mexico, where he stayed at his father's timeshare for one week in 2012.

While Defendant's mother might be suitable as a surety to mitigate the risk of flight, as provided below, she is not suitable to mitigate the danger to the community. Like Pretrial Services, the court is concerned with the violent nature of the instant offense and the fact that it allegedly involved firearms. This is particularly concerning in light of Defendant's prior conviction which involved pointing a firearm at, and threatening to kill, an individual with Davis, who is also a co-defendant in this case. And his role in the instant case was a major one – Defendant allegedly pointed a gun at the victim during the attempted robbery. It appears that Defendant has not learned anything from his prior convictions or time spent in custody for those convictions. To the contrary, he is now alleged to have committed an even more sophisticated offense involving violence. Moreover, he has a prior robbery conviction and a pending case for

5

possession of a controlled substance for which a warrant for his arrest has been issued. As such, there is no combination of release conditions to mitigate Defendant's risk of danger to the community.

### C. Risk of Nonappearance

Factors that indicate Defendant poses a risk of nonappearance include his lack of verifiable or stable employment, his passport and limited foreign travel and marijuana use. Mitigating factors include his familial ties to the community and the availability of sureties. As such, the court believes that there exists a combination of conditions that would mitigate Defendant's risk of nonappearance. Given the risk of danger to the community discussed above, however, this factor, alone, is insufficient.

### III.  CONCLUSION

In light of the nature of the instant offense and the weight of the evidence, the court finds that Defendant presents a danger to the community, and that there is no condition or combination of conditions that will reasonably assure the safety of any other person or the community.

For the reasons set forth above, Defendant shall remain committed to the custody of the Attorney General for confinement in a corrections facility separate, to the extent practicable, from persons awaiting or serving sentences or being held in custody pending appeal.  Defendant shall be afforded reasonable opportunity for private consultation with counsel.  On order of a court of the United States or on request of an attorney for the Government, the person in charge of the corrections facility in which Defendant is confined shall deliver Defendant to a United States marshal for the purpose of an appearance in connection with a court proceeding.

IT IS SO ORDERED.

DATED: February 24, 2014

KANDIS A. WESTMORE
United States Magistrate Judge